UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC MCNATT,

                                        Plaintiff,

            v.

RICHARD PRINCE, BLUM & POE, LLC,
BLUM & POE NEW YORK, LLC and
OCULA LIMITED,

                                        Defendants.

---

COMPLAINT

JURY TRIAL DEMANDED

Plaintiff Eric McNatt ("Mr. McNatt" or "Plaintiff"), by and through his undersigned counsel, for his Complaint ("Complaint") against defendants Richard Prince ("Mr. Prince"), Blum & Poe, LLC and Blum & Poe New York, LLC (each entity individually or both entities collectively, "Blum & Poe"), and Ocula Limited ("Ocula") (collectively, "Defendants") hereby alleges as follows:

### Nature of Action

1.        This is an action for injunctive, monetary and declaratory relief arising from Defendants' infringement of Mr. McNatt's exclusive rights in the photographic work entitled "Kim Gordon 1" (the "Copyrighted Photograph", a copy of which is attached hereto as Exhibit A).

2.        Mr. McNatt is a practiced and acclaimed commercial, editorial and fine art photographer who is the author and copyright owner of the Copyrighted Photograph, which is a black and white portrait capturing the musician Kim Gordon in her home in Northampton, Massachusetts.

3.      Defendant Prince, an "appropriation artist" notorious for incorporating the works of others into artworks for which he claims sole authorship, willfully and knowingly and without seeking or receiving permission from Mr. McNatt, copied and reproduced the Copyrighted Photograph as it appeared on an Internet website.  Mr. Prince uploaded a digital copy of the Copyrighted Photograph to the social media website Instagram ("Instagram") using his own Instagram account, accompanied by three captions (the "Infringing Post").  Mr. Prince printed a physical copy of the Infringing Post retaining the existing Instagram elements surrounding the Copyrighted Photograph (the "Infringing Portrait", a copy of which is attached hereto as Exhibit B), and displayed the Infringing Portrait at a gallery owned and operated by Blum & Poe in or around April and May of 2015 as part of an exhibition entitled "New Portraits" (the "Exhibition").  Mr. Prince has displayed and continues to display a copy of the Infringing Portrait on his Internet website, richardprince.com.

4.      Defendant Blum & Poe, a contemporary art gallery showcasing sculptures, paintings and photographs, solicited artworks (including the Infringing Portrait) from Mr. Prince; curated, funded, promoted and/or profited from the Exhibition; and/or compensated Mr. Prince from income produced by sales of artworks (including the Infringing Portrait) displayed at the Exhibition.  Blum & Poe has displayed and continues to display a copy of the Infringing Portrait on its Internet website, blumandpoe.com.

5.      Defendant Ocula, a global contemporary art marketplace that displays works of art for sale by galleries and connects potential buyers to such galleries, published a copy of the Infringing Portrait on its Internet website, ocula.com.  Through collaboration with Defendant Blum & Poe, Ocula promotes and displays the Infringing Portrait on its website and

2

facilitates its sale, including by offering a service through which visitors to its website can request pricing and availability of the Infringing Portrait from Blum & Poe.

6.     Defendant Prince and/or Defendant Blum & Poe created and distributed (or caused to be created and distributed) physical copies of an art book prominently featuring the Infringing Portrait (the "Infringing Book", the cover of which and pages displaying the Infringing Portrait within are attached hereto as Exhibit C) without seeking or receiving permission from, giving attribution to, or compensating Mr. McNatt.

**Jurisdiction and Venue**

7.     This is a civil action seeking injunctive, monetary and declaratory relief for violations of the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

10.     This Court has personal jurisdiction over each of the Defendants because Defendants reside in and/or are doing business in New York and have committed acts of copyright infringement within New York.

11.     An actual case or controversy has arisen between Plaintiff and Defendants because Defendants have injured Plaintiff by using the Copyrighted Photograph without Plaintiff's permission.

## Parties

12.     Plaintiff Eric McNatt is a commercial, editorial and fine art photographer, specializing in portraiture.  Mr. McNatt is a domiciliary of the State of New York, residing in New York City.  Mr. McNatt has been commissioned to take photographs for editorial and advertising purposes and has licensed photographs to numerous publications.  Mr. McNatt's photography has appeared in over 100 different magazines worldwide including *Entertainment Weekly*, *ESPN-The Magazine*, *Esquire*, *Fortune*, *Glamour*, *GQ*, *New York Magazine*, *The New York Times Magazine*, *Paper*, *People*, *Spin*, *Time*, *Vogue* and *Wired*, and in advertising campaigns for corporate clients in the music, television and other industries.  Mr. McNatt's work has been selected for inclusion in fine art publications, gallery exhibitions and esteemed benefit auctions, including Galerie Lelong, Randall Scott Gallery, Stricola Contemporary and Aperture, a longstanding not-for-profit foundation devoted to the publication of fine art photography.  At least one of Mr. McNatt's photographs is included in the collection of prominent art collector Joseph Baio.  Mr. McNatt has been nominated and/or selected for numerous awards, including an American Photography award (2016) and a New York Photo Festival Book Award (2009).

13.     Defendant Richard Prince is a notorious "appropriation artist" who has made tens of millions of dollars over the course of his career by reproducing, modifying or preparing derivative works from the works of others, typically without permission, and selling the reproduced, modified or derivative works as his own.  Mr. Prince is a resident of the State of New York, residing in Rensselaerville, New York.  Mr. Prince has previously appeared before this Court to defend against claims of copyright infringement.

14.     Defendant Blum & Poe, LLC is a limited liability company organized and existing under the laws of the State of California and having its principal place of business in the

4

County and City of Los Angeles.  Defendant Blum & Poe New York, LLC is a limited liability company organized and existing under the laws of the State of New York and having its principal place of business in the County and City of New York.  Blum & Poe owns and operates an art gallery in New York City located at 19 East 66th Street, New York, NY 10065 (the "New York Gallery") and an art gallery in Tokyo, Japan, located at 1-14-34 Jingumae, Shibuya, Tokyo 150-0001 (the "Tokyo Gallery").

15.     Defendant Ocula is a limited company registered in New Zealand and having its principal place of business in Auckland, New Zealand.  Ocula works with, buys from and/or sells to galleries, artists and consumers of contemporary art located in New York.

**Factual Background**

A.     **The Copyrighted Photograph**

16.     On July 25, 2014, Mr. McNatt photographed Kim Gordon, a musician, songwriter and visual artist best known for her role as the bassist, guitarist and vocalist of seminal alternative rock band Sonic Youth ("Ms. Gordon"), in conjunction with an interview for publication in *Paper*, a fashion and pop culture magazine.  During this session, at Ms. Gordon's home in Northampton, Massachusetts, Mr. McNatt captured the Copyrighted Photograph among other photographs of Ms. Gordon.  The Copyrighted Photograph was captured in color using a Canon EOS 6D 20.2 MP SLR digital camera and subsequently converted to black and white.

17.     For the photography session, Mr. McNatt purchased and/or provided his own equipment, including rolls of seamless grey nine-foot background paper which appears behind Ms. Gordon in the Copyrighted Photograph, a portable seamless hanging system and Autopoles for light and background set-up.  Mr. McNatt spent a total of approximately three hours shooting Ms. Gordon, approximately six hours traveling to and from Ms. Gordon's home

and another approximately twelve hours in post-production (including directing the editing, retouching, processing and conversion work performed by his agent), culminating in the publication version of the Copyrighted Photograph.

18.     The Copyrighted Photograph was first published on or about September 9, 2014 in *Paper's* thirtieth anniversary edition, online and in print, and on an Instagram account controlled by *Paper*.  On or about February 24, 2015, the Copyrighted Photograph was republished to *Paper's* Instagram account.  In each case, *Paper* published the Copyrighted Photograph under license from Mr. McNatt and with a credit acknowledging Mr. McNatt's authorship.

19.     On September 12, 2014, Mr. McNatt registered the Copyrighted Photograph with the United States Copyright Office (Registration No. VAu 1-191-324, a copy of which is attached hereto as Exhibit D).  The Copyrighted Photograph is highly original and unique.

20.     In February 2015, Mr. McNatt licensed the Copyrighted Photograph to the website VOGUE.com for a one-time use.  The Copyrighted Photograph appeared on VOGUE.com on or about February 20, 2015 with a credit acknowledging Mr. McNatt's authorship.

21.     Mr. McNatt has published digital copies of the Copyrighted Photograph for the purpose of soliciting business opportunities to (i) his Internet website, ericmcnatt.com, (ii) his Instagram account, "@ericmcnatt", and (iii) his account on the social media website Tumblr, in each case in close proximity to the notice "© Eric McNatt" or other notice of authorship and/or ownership.

B.       **The Infringing Post and the Infringing Portrait**

22.       On or about September 10, 2014, Richard Prince created and displayed the Infringing Post on his Instagram account, "@richardprince4".  The Infringing Post consisted of an exact reproduction of the Copyrighted Photograph, the only modification being minor cropping of the bottom and top portions, leaving almost the entirety of the Copyrighted Photograph fully intact (including Ms. Gordon's face, arms and torso).  The Infringing Post includes three captions (the "Appended Text") written by Mr. Prince appearing beneath the Copyrighted Photograph:

a.       "Portrait of Kim Gordon"

b.       "Kool Thang You Make My Heart Sang You Make Everythang Groovy"

c.       Six pictographs (or "emojis") depicting musical notation and instruments, selected from a stock set of emojis available for use by Instagram users.

23.       The caption "Kool Thang You Make My Heart Sang You Make Everythang Groovy" is a transliteration of lyrics to the 1960s hit song "Wild Thing", written by Chip Taylor, except that the word "Kool" replaces the word "Wild".  "Kool Thing" is the title of Sonic Youth's first major label record single.

24.       Instagram is a social media platform, owned by Facebook, Inc., described on its Internet website as "a fun and quirky way to share your life with friends through a series of pictures."  Instagram serves as a digital repository for photographs and messages, and a cottage industry has emerged catering to Instagram users who wish to own physical copies of digital photographs, comments and conversations.  Instagram's Terms of Use, made available on its website, provide that users shall comply with all laws, rules and regulations applicable to use of the Instagram service, "including but not limited to, copyright laws."

7

25.     The Infringing Portrait is an inkjet print on canvas of the Infringing Post. The Infringing Portrait includes an exact reproduction of the Copyrighted Photograph:

a.     cropped such that minor portions of the top and bottom of the Copyrighted Photograph are omitted, leaving virtually the entirety of the Copyrighted Photograph fully intact (including Ms. Gordon's face, arms and torso);

b.     framed by elements of the Instagram graphic user interface, including (i) above the Copyrighted Photograph: one line of text including a "thumbnail" image and username of Mr. Prince's Instagram account ("richardprince4") and, adjacent to that username, the number of minutes passed since Mr. Prince's post and (ii) below the Copyrighted Photograph: the Appended Text; and

c.     sized such that the total dimensions of the Infringing Portrait (consisting of the Copyrighted Photograph plus the framing Instagram elements) are approximately 4 ft. ¾ in. by 5 ft. 5 ¾ in.

26.     To create the Infringing Portrait, Mr. Prince: (i) accessed and copied the Copyrighted Photograph from *Paper's* website or Instagram account, (ii) published his copy of the Copyrighted Photograph to his own Instagram account, (iii) added the Appended Text to the Copyrighted Photograph via the Instagram "comment" function, thereby creating the Infringing Post, (iv) took a "screen save" of the Infringing Post as it appeared on his mobile phone, thereby saving a digital copy of the image captured by the screen save in the memory of the mobile phone, (v) sent the saved image to a computer and (vi) printed (or caused to be printed) the saved image as an inkjet on canvas, thereby creating a physical copy of the Infringing Post.

27.     All Instagram elements contained in the Infringing Portrait other than the Appended Text appeared mechanically as a function of the Instagram service when Mr. Prince

uploaded the Copyrighted Photograph to Instagram and added the Appended Text.  Mr. Prince's

sole modification prior to making a screen save was to add the Appended Text.

28.     On or about September 10, 2014, Mr. Prince posted to his Instagram

account a photograph of the Infringing Portrait with the caption: "Portrait of Kim Gordon, ink jet

on Canvas, 2014."  Using her Instagram account, "@kimletgordon", Ms. Gordon posted a

comment to Mr. Prince's post: "Awe!" (a copy of Mr. Prince's post depicting the Infringing

Portrait and a screen save that shows comments posted thereto are attached hereto as <u>Exhibit E</u>).

### C.     Discovery of Infringing Conduct

29.     Mr. McNatt was made aware of Mr. Prince's infringement in September

2014 by a friend who recognized the reproduction of the Copyrighted Photograph in Mr. Prince's

post of the Infringing Portrait, having previously seen the Copyrighted Photograph on *Paper's*

Instagram account crediting Mr. McNatt as author (as described in Paragraph 18 above).

30.     Multiple Instagram account holders posted comments to Mr. Prince's post

of the Infringing Portrait asserting that the Infringing Portrait incorporated a copy of Mr.

McNatt's work, including comments from accounts controlled by Mr. McNatt ("Photo by

@ericmcnatt") and the publishers of *Paper* ("@ericmcnatt, this photo is our favorite!").

31.     Mr. Prince posted at least one comment on Instagram responsive to the

comments described in Paragraph 30 above that is no longer accessible to the public.

32.     Subsequent to posting the Infringing Post and a photograph of the

Infringing Portrait to Instagram, Mr. Prince deleted his "@richardprince4" account.  Mr. Prince

has operated Instagram accounts other than the "@richardprince4" account prior to, during

and/or since operating the "@richardprince4" account.

**D.**      **Exhibition and Promotion of the Infringing Portrait**

33.      The Exhibition, originally held at the Tokyo Gallery from around April 3–
May 30, 2015, featured a series of sixteen inkjet prints on canvas, size 4 ft. ¾ in. by 5 ft. 5 ¾ in.,
of what Mr. Prince has referred to as "screen saves" of Instagram users' posts (including his
own).  The prints were produced by or on behalf of Mr. Prince and for sale by or through Blum
& Poe.

34.      Concurrent with or subsequent to the Exhibition, Ocula published a copy
of the Infringing Portrait on its website, ocula.com, and provided a service through which
visitors of the website could request pricing and availability of the Infringing Portrait from Blum
& Poe.

35.      One or more of the Defendants created (or caused to be created) and
endorsed promotional materials and advertisements of Mr. Prince's works (including the
Exhibition), including photographs depicting the Infringing Portrait displayed on Internet
websites owned and operated by the Defendants.

**E.**      **Conveyance of a Copy of the Infringing Portrait**

36.      On or about February 10, 2016, Mr. Prince posted to the social media
website Twitter ("Twitter") the following message: "Kim Gordon's cover painting for Loud
Song available at 303 Gallery, Printed Matter Book Fair LA" accompanied by a photograph of
Ms. Gordon holding a copy of a music album.  On or about February 11, 2016, 303 Gallery
posted to Twitter: "VIsit @303_In_Print Project Rm L @PRINTED_MATTER #LAABF this
week, presenting @RichardPrince4 new vinyl Loud Song!"  These posts referenced the
collaboration between Mr. Prince and Ms. Gordon on a vinyl music album entitled "Loud Song",

10

for which Mr. Prince recorded the music and Ms. Gordon created the cover art, which was

exhibited and/or offered for sale by 303 Gallery in Los Angeles in or around February 2016.

37.     On or about February 16, 2016, Ms. Gordon posted to Instagram a

photograph showing her holding a copy of the Infringing Portrait signed by Mr. Prince (a copy of

Ms. Gordon's post is attached hereto as Exhibit F).  Ms. Gordon posted a comment to her post,

directed to Mr. Prince: "So thrilled thank you@richardprince4".

### F.      The Infringing Book

38.     Concurrent with or subsequent to the Exhibition, Mr. Prince and/or Blum

& Poe created and published (or had created and published) a collection of Mr. Prince's works

displayed in the Exhibition, entitled "Richard Prince: New Portraits" (the "Infringing Book").  A

copy of the Infringing Portrait covers an entire page of the Infringing Book and is prominently

featured on two other pages of the Infringing Book.  Blum & Poe has sold and continues to sell

the Infringing Book at the New York Gallery and on its website for $200.  Blum & Poe printed a

first edition of 1,000 copies of the Infringing Book.  A colophon within the Infringing Book

includes the copyright notices, "© 2016 Blum & Poe and Richard Prince" and "All artworks and

images © the artist".

39.     On or about April 7, 2016, Mr. Prince republished (or "re-tweeted") a

message originally posted by another Twitter user, "@halfgallery", such that it appeared on Mr.

Prince's account: "'New Portraits' #RichardPrince 2016 published by @BlumandPoe (signed on

the cover)" accompanied by an image depicting the cover of the Infringing Book.

40.     On or about April 14, 2016, Mr. Prince re-tweeted a message originally

posted by Twitter user "@harpersbooks", an account belonging to Harper's Books, Inc., a

bookshop and art gallery located in East Hampton, New York: "Last week, this week.  Only the

carpet changed.  New Portraits #richardprince.  I assure you no other copies at AIPAD"
accompanied by images depicting (i) one page of the Infringing Book, solely featuring the
Infringing Portrait, and (ii) the cover of the Infringing Book (such re-tweeted post attached
hereto as Exhibit G).

41.     From around September 15–18, 2016, the Infringing Book was displayed
and offered for sale at the New York Art Book Fair ("NYABF"), located at MoMA PS1, an art
gallery located at 22-25 Jackson Ave, Long Island City, NY 11101.

42.     From around September 16–19, 2016, the Infringing Book was displayed
and offered for sale at the Tokyo Art Book Fair ("TABF"), located at the Gaien Campus shared
by the Kyoto University of Art and Design and its sister school, the Tohoku University of Art
and Design, located at 1-7-15 Kita-Aoyama, Minato-ku, Tokyo, Japan.

43.     On or about September 21, 2016, Blum & Poe published to Twitter the
following advertisement: "NEW PORTRAITS is now available for order online, after its
premiere at NYABF + TABF #RichardPrince @richardprince4 store.blumandpoe.com"
accompanied by an animation depicting several pages of the Infringing Book being flipped
through, including a page solely featuring the Infringing Portrait (a copy of the post is attached
hereto as Exhibit H).  On or about September 21, 2016, Mr. Prince re-tweeted Blum & Poe's
post.  On or about September 22, 2016, Mr. Prince posted a comment to the Blum & Poe Twitter
post: "@BlumandPoe Cool book.  Where do I get one?"

### G.     Defendant Prince's Contempt for Copyright Law

44.     None of Mr. Prince, Blum & Poe or Ocula ever solicited or obtained
permission from Mr. McNatt to reproduce, modify, distribute or display the Copyrighted
Photograph or prepare any derivative work therefrom.

45.     Mr. Prince has achieved notoriety in the "appropriation art" industry for his blatant disregard of copyright law.  Mr. Prince consistently and repeatedly has incorporated others' works into works for which he claims sole authorship without obtaining permission from, or providing compensation, recognition or attribution to, the original work's author or copyright owner.

46.     Regarding the legal implications of his practice, Mr. Prince commented in 2011: "Copyright has never interested me.  For most of my life I owned half a stereo so there was no point in suing me, but that's changed now and it's interesting. … So, sometimes it's better not to be successful and well known and you can get away with much more.  I knew what I was stealing 30 years ago but it didn't matter because no one cared, no one was paying any attention."

47.     In 2011, Mr. Prince republished and sold a 500 run first edition of J.D. Salinger's *The Catcher in the Rye*, identical to Mr. Salinger's work except that (i) Mr. Salinger's name was replaced with Mr. Prince's as the author of the work and (ii) Mr. Prince's version included a colophon with the statement, "This is an artwork by Richard Prince.  Any similarity to a book is coincidental and not intended by the artist" and included the notice "© Richard Prince."

48.     In an interview conducted by Ms. Gordon and published in *Interview Magazine* on or about June 21, 2012, Ms. Gordon asked Mr. Prince about his publication of *The Catcher in the Rye*.  Mr. Prince replied that he was "aware of the implications" of his actions, boasting that *The Catcher in the Rye* is "the Disneyland of book publishing" and that "[y]ou don't mess with images from Disney." He went on to explain that his purpose for republishing Mr. Salinger's novel was simply "to double the price... just to make sure, if you were going to

buy my Catcher in the Rye, you were going to have to pay twice as much as the one Barnes and Noble was selling from J.D. Salinger."

49.     Mr. Prince was previously a defendant in a suit by a photographer alleging direct and indirect copyright infringement primarily related to an exhibition of Mr. Prince's works entitled "Canal Zone" (the "Canal Exhibition") (*Cariou v. Prince*, 784 F. Supp. 2d 337, 342 (S.D.N.Y. 2011), *judgment rev'd in part, vacated in part*, 714 F.3d 694 (2d Cir. 2013)).

50.     Mr. Prince created thirty works incorporating the *Cariou* plaintiff's photographs (the "Prince Canal Works"), twenty-nine of which were displayed in the Canal Exhibition.  The amount and substantiality of the *Cariou* plaintiff's photographs incorporated into the Prince Canal Works varied and such photographs were to differing degrees overlaid or interspersed with non-copyrighted elements.

51.     This Court found infringement as a matter of law for all thirty Prince Canal Works; the Court of Appeals for the Second Circuit reversed as to twenty-five of the Prince Canal Works (finding such works to be permissible fair use) and remanded to this Court the adjudication of the five remaining Prince Canal Works.  Prior to such adjudication, Mr. Prince reached a settlement with the *Cariou* plaintiff out of court, the terms of which have not been publicly disclosed.  One of the Prince Canal Works held to be fair use and the *Cariou* plaintiff's photographs incorporated therein were reproduced in the Second Circuit's opinion, and are attached hereto as Exhibit I.  All five remanded Prince Canal Works, and the *Cariou* plaintiff's photographs incorporated therein, are attached hereto as Exhibit J.

52.     During the interview described in Paragraph 48 above, Ms. Gordon and Mr. Prince discussed *Cariou v. Prince* and the notion that the court had become an extension of Mr. Prince's artistic expression.  In an interview with *Russh Magazine,* Mr. Prince acknowledged

the positive impact the controversy had on the Prince Canal Works: "It's funny because if this guy had let it alone, well it was a very unsuccessful body of work and it would have gone away."

53.     On or about April 21, 2016, Mr. Prince re-tweeted a post originally posted to Twitter by user "@Plantwerk": "@RichardPrince4 on being cool,cracking-up.shit-stirring,asshole judges.Flip-flop narcissism/democracy of Instagram" accompanied by a hyperlink to an article published on the website vulture.com stating that: "Prince has always been blunt about stealing — the outlaw idea is the core of who he is as an artist.  And he's endured reputation-confirming copyright-infringement lawsuits over the years; like a good punk, he did it by eye-rolling his way through depositions…   And even today, as the secure winner [of *Cariou v. Prince*], Prince seems really unhappy to have had to play by the rules of the court — or really any rules."  A friend of Mr. Prince's in the art community is quoted in the article as saying: "The consequences of trouble almost don't matter.  The trouble is what is exciting.  The trickery is the really fun part.  For Richard the lawsuits are also the artwork.  They were a joke.  He's devoted to that idea."  Mr. Prince is quoted in the article as saying: "I'm not going to change, I'm not going to ask for permission, I'm not going to do it.  I don't know how to do it that way.  I don't respond that way."

54.     On or about May 4, 2016, Mr. Prince re-tweeted a post originally published to Twitter by fashion video network Made to Measure ("@m2m"): "When art becomes art, what is fair use and what is misuse? @RichardPrince4", accompanied by photographs of Other New Portraits Works (as defined below) and a hyperlink to a video-recorded interview with Mr. Prince in which Mr. Prince declares: "The reason why I won the [*Cariou*] case was that they realized finally they were dealing with a fucking crazy artist who's essentially going to do exactly what he wants to do regardless of their laws."

55.     Mr. Prince has been sued for copyright infringement on at least two occasions subsequent to *Cariou v. Prince* and prior to the commencement of this litigation with respect to works ("Other New Portraits Works") in which he employed the same or similar methods described in Paragraph 26 above[1], except that these and many Other New Portraits Works were created from Mr. Prince's screen saves of Instagram accounts other than his own account.   Each Other New Portraits Work consists of a photograph not taken by Mr. Prince that is framed by elements of the Instagram graphic user interface and appended text written by Mr. Prince that he has generally referred to alternatively as "non sequitur", "gobblygook", "jokes", "oxymorons", "'psychic jiu jitsu'" (quotation marks in original) and "inferior language" that "sounds like it means something."

56.     On or about January 4, 2016, Mr. Prince posted to Twitter an image of an Other New Portraits Work that was the subject of copyright litigation, accompanied by the message: "U want fame?  Take mine.  Only thing that counts is good art.  All the everything else is bullshit."

57.     On or about January 27, 2016, Mr. Prince posted to Twitter an image of an Other New Portraits Work accompanied by the message: "You can't sue me if its not for sale. You can call me asshole lazy shit.  But you can't sue me."

---

[1] *Graham v. Prince*, No. 1:15-cv-10160-SHS (S.D.N.Y.); *Salazar v. Prince*, No. 2:16-cv-04282-MWF-FFM (C.D. Cal.).  During this period, Mr. Prince has also been sued with respect to at least one work not included in the Other New Portraits Works (*Dennis Morris, LLC v. Prince*, No: 2:16-cv-03924-RGK-PJW (C.D. Cal.)).

58.     On or about July 5, 2016, Mr. Prince posted to Twitter: "The 1 thing lawyers&their clients who sue can't understand, is that it always starts off havin nothin to do with art" accompanied by a photograph of a car with a Canal Zone license plate.

59.     On or about August 26, 2016, Mr. Prince posted to Twitter: "Stop suing me.  If you want your stupid fucking picture, I'll give it to you.  Take it.  Please."

60.     On or about August 28, 2016, Mr. Prince posted to Twitter a screen save of another Instagram user's account, "@mona_offi", accompanied by the message: "Don't worry... I won't 'portrait' you."

61.     On or about October 1, 2016, Mr. Prince posted to Twitter a photograph of Melania Trump accompanied by the message: "Yes.  I'm advising Melania how to plagiarize. She's a natural.  Hillary?  I'm Mr Jones on that one", referencing Ms. Trump's allegedly plagiarized speech at the 2016 Republican National Convention and likening himself to David S. Jones, a poet who pseudonymously published nearly 60 poems in over thirty literary journals from 1990-93 prior to being exposed as a serial plagiarist.

62.     On or about October 16, 2016, Mr. Prince posted to Twitter: "Who's on First?" accompanied by an excerpt from a legal analysis of the Second Circuit decision *TCA Television Corp. v. McCollum,* No. 16-134-cv, 2016 WL 5299174 (2d Cir. Oct. 11, 2016), contrasting the *TCA Television* defendants' use of an original comedy routine with Mr. Prince's use of the *Cariou* plaintiff's original photographs.

**First Claim for Relief**
**(Copyright Infringement Against Richard Prince With Respect to the Infringing Post,**
**the Infringing Portrait and the Infringing Book)**
**(17 U.S.C. §§ 106, 501)**

63.     Mr. McNatt hereby incorporates Paragraphs 1 through 62 of this Complaint as if fully set forth herein.

17

64.     Defendant Prince infringed Mr. McNatt's exclusive rights as the copyright owner of the Copyrighted Photograph by reproducing, publicly displaying and causing the Copyrighted Photograph to be distributed; by incorporating the Copyrighted Photograph into the unauthorized preparation of the Infringing Post, the Infringing Portrait and the Infringing Book; and by utilizing depictions of the Infringing Portrait and the Infringing Book in promotional and advertising materials for Mr. Prince's works and the Exhibition, and on Mr. Prince's website, in each case without the permission of Mr. McNatt.

65.     Defendant Prince's infringements were willful.  As a notorious "appropriation artist" who has been a defendant in copyright infringement litigation and has demonstrated particular awareness of copyright jurisprudence, Mr. Prince had knowledge that his unauthorized use of the Copyrighted Photograph infringed Mr. McNatt's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the likelihood thereof.  The willfulness of Mr. Prince's infringement is further demonstrated by (i) his having appended a copyright notice to at least one previous work, (ii) his utilization of the Instagram service, in accordance with which he agreed to comply with copyright law, (iii) his taking of the Copyrighted Photograph from a website or Instagram account that expressly credited Mr. McNatt as the author and/or copyright owner of the Copyrighted Photograph and (iv) his continued use of the Copyrighted Photograph after receiving comments to his Instagram account notifying him that Mr. McNatt was the owner of the Copyrighted Photograph.  That Mr. Prince engaged in infringing conduct subsequent to notice of copyright ownership confirms the willfulness and knowledge with which Mr. Prince infringed Mr. McNatt's copyright in the Copyrighted Photograph.

66.     Defendant Prince's infringement has caused and continues to cause injury to Plaintiff to a degree and extent as yet to be determined.

**Second Claim for Relief**
**(Copyright Infringement Against Blum & Poe With Respect to the Infringing Portrait and the Infringing Book)**
**(17 U.S.C. §§ 106, 501)**

67.     Mr. McNatt hereby incorporates Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68.     Defendant Blum & Poe infringed Plaintiff's exclusive rights as the copyright owner of the Copyrighted Photograph by publicly displaying, offering for sale and/or selling the Infringing Portrait; by utilizing depictions of the Infringing Portrait in promotional and advertising materials for Mr. Prince's works and the Exhibition, and on websites that it operates and owns; and by creating, distributing and selling (or materially assisting in the creation, distribution and selling of) the Infringing Book; in each case without the permission of Mr. McNatt.

69.     Defendant Blum & Poe's infringement was willful.  As a well-established and sophisticated art gallery with locations around the world that has represented Mr. Prince, a notorious "appropriation artist" whose blatant disregard for copyright law is well-documented (and acknowledged on its website), Blum & Poe knew or should have known that its actions infringed Mr. McNatt's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the likelihood thereof.

70.     Despite its knowledge and willfulness, Defendant Blum & Poe encouraged and allowed Mr. Prince to publicly display, offer for sale and/or sell the Infringing Portrait and the Infringing Book, materially contributing to the infringing activity by providing the space and resources, as well as the promotional and advertising assistance, that made the Exhibition and the

19

publication and sale of the Infringing Book possible.  Accordingly, Blum & Poe is contributorily liable for infringement of Mr. McNatt's copyright in the Copyrighted Photograph.

71.     As a gallery and agent of Mr. Prince, Defendant Blum & Poe had the ability to influence and control Mr. Prince's infringing actions regarding his exhibition and sale of artworks.  By encouraging, allowing and providing the resources for Mr. Prince to publicly display, offer for sale and/or sell the Infringing Portrait and the Infringing Book, Blum & Poe benefitted financially from the publicity and notoriety it received resulting from the Exhibition, as well as the resulting sales of the Infringing Portrait, the Infringing Book and/or the Other New Portraits Works displayed and advertised alongside the Infringing Portrait.  Accordingly, Blum & Poe is vicariously liable for infringement of Mr. McNatt's copyright in the Copyrighted Photograph.

72.     Defendant Blum & Poe's infringing actions have caused and continue to cause injury to Plaintiff to a degree and extent as yet to be determined.

**Third Claim for Relief**
**(Copyright Infringement Against Ocula With Respect to the Infringing Portrait)**
**(17 U.S.C. §§ 106, 501)**

73.     Mr. McNatt hereby incorporates Paragraphs 1 through 72 of this Complaint as if fully set forth herein.

74.     Defendant Ocula infringed Plaintiff's exclusive rights as the copyright owner of the Copyrighted Photograph by publicly displaying, offering for sale and/or selling the Infringing Portrait on websites that it operates and owns, in each case without the permission of Mr. McNatt.

75.     Defendant Ocula's infringement was willful.  As a well-established and sophisticated contemporary art marketplace that has partnerships with over 165 galleries

worldwide and provides comprehensive online access to artworks, exhibitions and artists, Ocula has had longstanding knowledge of Mr. Prince's practices as an "appropriation artist". Ocula exercises substantial scrutiny of the galleries accepted or invited to display works of art on its website. Of the over 6,000 artists that Ocula has displayed on its website, Ocula has presented Mr. Prince as one of between one- and two-hundred "Featured Artists." Given its sophistication as a contemporary art marketplace and familiarity with Mr. Prince's practices, Ocula knew or should have known that its actions infringed Mr. McNatt's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the likelihood thereof.

76.     Despite its knowledge and willfulness, Defendant Ocula encouraged and allowed Mr. Prince and/or Blum & Poe to publicly display, offer for sale and/or sell the Infringing Portrait, materially contributing to the infringing activity by providing the forum, as well as the promotional and advertising assistance, that made sales of the Infringing Portrait possible. Ocula provides support to defendant Blum & Poe and reaps financial benefit from the promotion and potential sale of the Infringing Portrait. Accordingly, Ocula is contributorily liable for infringement of Mr. McNatt's copyright in the Copyrighted Photograph.

77.     As a contemporary art marketplace with editorial control over a significant medium through which Mr. Prince's work was exhibited and offered for sale, Defendant Ocula had the ability to influence and control Mr. Prince's infringing actions regarding his exhibition and sale of artworks. By encouraging, allowing and providing the resources for Mr. Prince to publicly display, offer for sale and/or sell the Infringing Portrait to its website visitors, Ocula benefitted financially from the publicity and notoriety it received resulting from publicizing the Infringing Portrait and the Other New Portraits Works displayed and advertised alongside the

Infringing Portrait.  Accordingly, Ocula is vicariously liable for infringement of Mr. McNatt's copyright in the Copyrighted Photograph.

78.     Defendant Ocula's infringing actions have caused and continue to cause injury to Plaintiff to a degree and extent as yet to be determined.

**Fourth Claim for Relief**
**(Declaration that Mr. Prince's Use of the Copyrighted Photograph in the Infringing**
**Post, the Infringing Portrait and the Infringing Book Does Not Qualify as a**
**Protected Fair Use)**
**(28 U.S.C. §§ 2201-02; 17 U.S.C. § 107)**

79.     Mr. McNatt hereby incorporates Paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     None of the Infringing Post, the Infringing Portrait or the Infringing Book qualifies as a criticism, comment, news reporting, teaching, scholarship or research (the enumerated illustrative statutory categories of fair use).

81.     The Infringing Post, the Infringing Portrait and the Infringing Book do not alter the Copyrighted Photograph with new expression, meaning or message to an extent sufficient to characterize any such work as transformative.  The focus of each of the Copyrighted Photograph, the Infringing Post and the Infringing Portrait is the singular image of a black and white portrait of Ms. Gordon.  The Infringing Post and the Infringing Portrait each are referred to by Mr. Prince as a "Portrait of Kim Gordon".  Neither the Infringing Post nor the Infringing Portrait manifest a different aesthetic as compared to the Copyrighted Photograph, and the creative and communicative results of such works are essentially the same.  Mr. Prince did not himself impose any distortions or modifications to the Copyrighted Photograph as it appears in each of the Infringing Post and the Infringing Portrait.

82.     The only additions to the Copyrighted Photograph in the Infringing Post and the Infringing Portrait are the framing Instagram elements surrounding the Copyrighted Photograph, of which the sole contribution attributable to Mr. Prince is the Appended Text.  A reasonable observer would not conclude in a side-by-side comparison of the Copyrighted Photograph and the Infringing Post/Infringing Portrait that the addition of an Instagram frame to the Copyrighted Photograph has made a transformative use of the Copyrighted Photograph.

83.     The Infringing Post, the Infringing Portrait and the Infringing Book are commercial works.  The Infringing Post (and subsequent posts depicting the Infringing Portrait and the Infringing Book) served a promotional and advertising purpose for the Exhibition and for the sale of Mr. Prince's works to his over 18,000 followers on social media.  The Infringing Portrait was exhibited privately and/or publicly to fine art market customers and is offered for sale online.  The Infringing Book is described by Blum & Poe as a best-seller and continues to be sold and distributed in furtherance of the commercial purpose of the Exhibition.  A copy of the Infringing Portrait was sold or otherwise conveyed to Ms. Gordon, who has collaborated with Mr. Prince on at least one artwork for exhibition and/or sale and has advertised Mr. Prince's works to her over 160,000 followers on social media.  Any display of the Infringing Post, the Infringing Portrait or the Infringing Book to the broader public was incidental to its commercial purpose.

84.     The Copyrighted Photograph is a creative and expressive work.

85.     The amount and substantiality of the Copyrighted Photograph used in the Infringing Post, the Infringing Portrait and the Infringing Book was not necessary or reasonable to any transformative purpose.  Mr. Prince incorporated an exact copy of the Copyrighted Photograph into the Infringing Post, the Infringing Portrait and the Infringing Book.  As such,

Mr. Prince necessarily copied the heart of Mr. McNatt's work.  That Mr. Prince took virtually the entirety of the Copyrighted Photograph emphasizes its value to Mr. Prince's work.  Mr. Prince's exact copying of the Copyrighted Photograph capitalized on the aesthetic value intrinsic to the Copyrighted Photograph.

86.    The Infringing Post and the Infringing Portrait are targeted to the same markets and for the same target audience to which Mr. McNatt has marketed the Copyrighted Photograph.  The Infringing Book is targeted to the same derivative markets and for the same target audience to which Mr. McNatt has generally marketed uses of his photographs.

87.    The unauthorized presence of the Infringing Post, the Infringing Portrait and the Infringing Book in the markets for visual works is likely to impair and usurps the markets (including the derivative markets) for the Copyrighted Photograph.  Mr. McNatt is active in the market for commercial licensing of his photographs, and showcasing and selling prints of his work to fine art galleries, private collections and individual collectors.  The markets for licensing the Copyrighted Photograph to authors of derivative works are markets that Mr. McNatt is naturally capable of developing.

88.    Unrestricted and widespread conduct of the sort engaged in by Mr. Prince in creating, displaying and, as applicable, selling the Infringing Post, the Infringing Portrait and the Infringing Book would usurp actual or potential markets for Mr. McNatt's portraiture work. Mr. McNatt is active in the market for the licensing of commercial photography.  He participates within this market at his own direction and expense, on commission from publishers and other commercial entities, and/or for the benefit of his portraiture subjects, which include wealthy and/or famous subjects such as Oprah Winfrey, Michael Phelps, Liza Minnelli, Billie Joe Armstrong and Courtney Love, among many others.  Mr. McNatt has on multiple occasions

24

provided copies of portraits to his famous subjects with the intention of fostering future business

opportunities, including rock musicians Meg and Jack White (who perform as the White Stripes)

and electronic musician Merrill Beth Nisker (who performs under the stage name Peaches).

Were Instagram users permitted to freely upload Mr. McNatt's copyrighted portraits of

celebrities (or other subjects) to social media accounts and convey copies of those portraits to

those subjects or their fans without his permission, then an existing market on which Mr. McNatt

relies for leveraging his copyright would be usurped.  Were behavior of the sort engaged in by

Mr. Prince to become unrestricted and widespread, Mr. McNatt would have no greater control

(and thus no market advantage) over the distribution of his copyrighted works than anyone with

an Instagram account and access to an inkjet printer.

### **Prayer for Relief**

WHEREFORE, the Plaintiff prays that this Court enter judgment in his favor and

against Defendants:

1.      Finding that Defendants have infringed Mr. McNatt's exclusive rights in

the Copyrighted Photograph, pursuant to 17 U.S.C. § 106;

2.      Granting Mr. McNatt declaratory relief declaring that Mr. Prince's use of

the Copyrighted Photograph in each of the Infringing Post, the Infringing Portrait and the

Infringing Book is not a fair use protectable under 17 U.S.C. § 107, pursuant to 28 U.S.C. §§

2201-02;

3.      Granting Mr. McNatt permanent injunctive relief enjoining each

Defendant from reproducing, modifying, preparing derivative works from, displaying or selling,

offering to sell, or otherwise distributing the Copyrighted Photograph, the Infringing Post, the

Infringing Portrait, the Infringing Book or any other infringing articles, including any copies of any of the foregoing existing in any form, pursuant to 17 U.S.C. § 502;

4.      Ordering the seizure and forfeiture to Mr. McNatt, or other disposition as the Court deems appropriate, of the Infringing Portrait, and ordering the destruction, or other disposition as the court deems appropriate, of the Infringing Post, the Infringing Book and any other infringing articles, including all copies of any of the foregoing existing in any form in the possession or under the control of any of the Defendants, pursuant to 17 U.S.C. § 503;

5.      Granting Mr. McNatt statutory damages in the maximum amount allowed by law, or, alternatively at Mr. McNatt's election, actual damages suffered by Mr. McNatt and profits or other advantages derived by Defendants arising out of or related to copyright infringement of the Copyrighted Photograph, pursuant to 17 U.S.C. § 504, in amounts to be proven;

6.      Directing the Defendants to reimburse Mr. McNatt's attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505; and

7.      Granting such other and further relief as the Court deems proper and just.

26

November 16, 2016

CRAVATH, SWAINE & MOORE LLP,

by      s/ Christopher P. Davis

_____
David R. Marriott
David J. Kappos
Christopher P. Davis

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
*dmarriott@cravath.com*
*dkappos@cravath.com*
*cdavis@cravath.com*

*Attorneys for Plaintiff Eric McNatt*

27