**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIC MCNATT,

                    Plaintiff,                          Case No. 1:16-cv-8896 (SHS)

vs.

RICHARD PRINCE, BLUM & POE, LLC,
AND BLUM & POE NEW YORK, LLC,

                    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
PRECLUDE IMPROPER, UNHELPFUL, AND/OR UNQUALIFIED
EXPERT TESTIMONY**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARD......................................................................................................................2

ARGUMENT..................................................................................................................................4

    A.    Plaintiff's Experts Should Be Precluded From Offering Testimony That Usurps The Role Of The Judge Or The Jury ...........................................................4

    B.    Plaintiff Should Be Precluded From Presenting Cumulative Expert Testimony ...................................................................................................................8

    C.    Plaintiff's Experts Should Be Precluded From Opining On Matters On Which They Are Unqualified To Offer An Opinion ...............................................9

    D.    Plaintiff's Experts Should Be Precluded From Offering Opinions That Are Not Grounded In Sufficient Data Or Reliable Methodology.................................11

    E.    Plaintiff's Experts Should Be Precluded From Offering Hyperbolic And Speculative Opinions At Trial ..................................................................................13

    F.    Plaintiff's Experts Should Be Precluded From Offering Testimony On Settlements Involving The Defendants...................................................................15

CONCLUSION.............................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*523 IP LLC v. CureMD.Com*,
　48 F. Supp. 3d 600 (S.D.N.Y. 2014)...................................................................................10

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
　303 F.3d 256 (2d Cir. 2002).............................................................................................11

*Ascher v. Target Corp.*,
　522 F. Supp. 2d 452 (E.D.N.Y. 2007) ..............................................................................10

*Banker v. Nighswander, Martin & Mitchell*,
　37 F.3d 866 (2d Cir. 1994)...............................................................................................16

*Capri Sun GmbH v. Am. Beverage Corp.*,
　595 F. Supp. 3d 83 (S.D.N.Y. 2022)..............................................................................2, 13

*Celebrity Cruises Inc. v. Essef Corp.*,
　434 F. Supp. 2d 169 (S.D.N.Y. 2006)...........................................................................11, 12

*Crigger v. Fahnestock & Co.*,
　2005 WL 857368 (S.D.N.Y. Apr. 14, 2005)......................................................................16

*Daubert v. Merrell Dow Pharms., Inc.*,
　509 U.S. 579 (1993)...................................................................1, 2, 7, 8, 11, 13, 15

*Dollman v. Mast* Indus., Inc.,
　2011 WL 3911035 (S.D.N.Y. Sept. 6, 2011).....................................................................16

*F.H. Krear & Co. v. Nineteen Named Trs.*,
　810 F.2d 1250 (2d Cir. 1987)..............................................................................................9

*Faulkner v. Arista Records LLC*,
　46 F. Supp. 3d 365 (S.D.N.Y. 2014)................................................................................12

*Gaffney v. Dep't of Info. Tech. and Telecomms.*,
　579 F. Supp. 2d 455 (S.D.N.Y. 2008)...............................................................................17

*Golden v. OSG Ship Mgmt., Inc.*,
　2017 WL 11454726 (S.D.N.Y. Oct. 12, 2017)...............................................................3, 5, 8

*Hart v. RCI Hosp. Holdings, Inc.*,
　90 F. Supp. 3d 250 (S.D.N.Y. 2015).................................................................................16

*Highland Capital Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005)............................................................3, 5, 17

*Highland Cap. Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173, 184 (S.D.N.Y. 2008)................................................................8

*Hiramoto v. Goddard Coll. Corp.*,
  184 F. Supp. 3d 84 (D. Vt. 2016), *aff'd*, 684 F. App'x 48 (2d Cir. 2017)..............15

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir.1992)........................................................................................5

*In re Initial Pub. Offering Sec. Litig.*,
  174 F. Supp. 2d 61 (S.D.N.Y. 2001).........................................................................7

*Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*,
  645 F. Supp. 3d 95 (E.D.N.Y. 2022) ........................................................................3

*Kennon v. Slipstreamer, Inc.*,
  794 F.2d 1067 (5th Cir. 1986) .................................................................................16

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999)...................................................................................................2

*Laumann v. NHL*,
  117 F. Supp. 3d 299 (S.D.N.Y. 2015).....................................................................12

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. Jul. 16, 2002) ..........................................................13

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004)...............3, 15

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017).........9

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008).......................................................................................2

*Malletier v. Dooney & Bourke, Inc.*,
  525 F. Supp. 2d 558 (S.D.N.Y. 2007).......................................................................6

*Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*,
  2010 WL 3907489 (N.D.N.Y. Sept. 30, 2010) .........................................................9

*Munn v. Hotchkiss Sch.*,
  24 F. Supp. 3d 155 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018) ..........15

*In re Navidea Biopharmaceuticals Litig.*,
   2022 WL 16833587 (S.D.N.Y. Nov. 9, 2022) ...................................................................7

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005) .................................................................................2, 6, 8

*Olin Corp. v. Lamorak Ins. Co.*,
   2018 WL 1901634 (S.D.N.Y. Apr. 18, 2018) ................................................................12

*Price v. Fox Ent. Grp., Inc.*,
   499 F. Supp. 2d 382 (S.D.N.Y. 2007) .............................................................................6

*Primavera Familienstifung v. Askin*,
   130 F. Supp. 2d 450 (S.D.N.Y. 2001), *abrogated on other grounds by Casey
   v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011) ............................................................4, 13

*R.B. Ventures, Ltd. v. Shane*,
   2000 WL 520615 (S.D.N.Y. May 1, 2000) ......................................................................4

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) .......................................................................5, 15

*Rosario v. City of New York*,
   2021 WL 1930293 (S.D.N.Y. May 13, 2021) ..................................................................2

*Schwab v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 992 (E.D.N.Y. 2006), *rev'd sub nom. on other grounds
   McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) .....................................3

*Snyder v. Wells Fargo Bank, N.A.*,
   2012 WL 4876938 (S.D.N.Y. Oct. 15, 2012) ................................................................15

*Speedfit LLC v. Woodway USA, Inc.*,
   2020 WL 130423 (E.D.N.Y. Jan. 9, 2020) ....................................................................16

*United States v. Articles of Banned. Hazardous Substances Consisting of an
   Undetermined No. of Cans of Rainbow Foam Paint*,
   34 F.3d 91 (2d Cir. 1994) ...............................................................................................5

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ..........................................................................................4

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) ................................................................................................4

*United States v. Gentile*,
   233 Fed. Appx. 86 (2nd Cir. 2007) .................................................................................8

iv

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With*
   *Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.,*
   2021 WL 1405185 (S.D.N.Y. Apr. 14, 2021)..............................................................................2

## Rules

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) ................................................................3

Federal Rule of Evidence 402....................................................................................................3

Federal Rule of Evidence 403...............................................................................3, 8, 12, 13, 16

Federal Rule of Evidence 408.............................................................................................16, 17

Federal Rule of Evidence 702.................................................................................................2, 11

Federal Rule of Evidence 704..................................................................................................4

Defendants Richard Prince ("Prince"), Blum & Poe, LLC and Blum & Poe New York, LLC (collectively, "Blum & Poe," and together with Prince, "Defendants"), respectfully submit this motion *in limine* to preclude Plaintiff's experts from offering improper, unhelpful, and/or unqualified expert testimony.

## INTRODUCTION

Plaintiff apparently intends to call up to four expert witnesses at trial to testify on the same issue of fair use, and one to testify on damages. Even if this testimony were not undeniably cumulative, which it is, the reports of these experts—Michelle Bogre, Amy Whitaker, Nate Harrison, A.D. Coleman,[1] and Stephen Holzen—largely consist of legal conclusions and lawyer arguments, political diatribes, and rank speculation that goes well beyond their qualifications or expertise. Furthermore, each of Plaintiff's disclosed experts hold opinions that if testified to in open court, would both usurp the role of the Judge to instruct the jury on the applicable law, and usurp the role of the jury to apply the law to the relevant facts before it and to determine the ultimate issues in the case.

In its September 19, 2019, oral ruling on the parties' *Daubert* motions (the "Daubert Ruling"), this Court made clear that these categories of testimony are improper and would not be considered on Defendants' Motion for Summary Judgment. *See* 9/19/19 Hr'g Tr. (Ex. A)[2] at 7-13. The same reasoning applies again here, and with even more force in front of a jury. Plaintiff must therefore be precluded from using his experts to inject improper evidence and argument into

---

[1]  Plaintiff has purported to remove Coleman from his witness list as of the date of this filing. However, given Plaintiff's reservation of rights to amend his witness list at a later date and out of an abundance of caution, Defendants include argument regarding Coleman in this motion.

[2]  The exhibits cited in this memorandum are attached to the Declaration of Maaren A. Shah, submitted concurrently herewith.

the trial, including testimony: (1) that usurps the role of the Judge and/or the jury; (2) that is cumulative; (3) on topics that go beyond the experts' qualifications or expertise; (4) consisting of hyperbolic arguments, speculation, or personal views; and (5) on the fact and amount of settlements or settlement offers..

## LEGAL STANDARD

To fulfill their gatekeeping function, district courts shall "mak[e] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)); *see also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("Under *Daubert*, the district court functions as the gatekeeper for expert testimony, whether proffered at trial or in connection with a motion for summary judgment.") (quotation marks and citation omitted).

*Daubert* and its progeny are codified by Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert … may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. *Daubert*'s threshold standards apply equally to rebuttal experts, and "like any expert, a rebuttal expert may not usurp the court's role in instructing the jury on the law." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 139 (S.D.N.Y. 2022) (citing *Rosario v. City of New York*, 2021 WL 1930293, at

*8 (S.D.N.Y. May 13, 2021)).[3]

Accordingly, experts may not testify on the legal implications of a party's conduct; instead, the court must be the jury's only source of law and it is the jury's exclusive province to apply that law to the facts. *Golden v. OSG Ship Mgmt., Inc.*, 2017 WL 11454726, at *2 (S.D.N.Y. Oct. 12, 2017) (internal citation omitted) ("[A]n expert may not present opinions that invade the province of the court to determine the applicable law and to instruct the jury as to that law."); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005) (stating that while experts may opine on issues of fact, they may not give testimony stating ultimate legal conclusions based on those facts). Similarly, expert testimony that is "speculative or conjectural," or that "is connected to existing data only by the *ipse dixit* of the expert," is inadmissible. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) (internal quotation marks and citations omitted). Expert opinion may also be excluded under Federal Rule of Evidence 402 or 403 if it is irrelevant, inflammatory, prejudicial cumulative, or wastes time. *See, e.g., Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1221 (E.D.N.Y. 2006), *rev'd sub nom. on other grounds McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).

---

[3] It is well settled that the scope of a rebuttal expert's testimony is limited to the subject matter encompassed by the opinions of the opposing party's affirmative expert. *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, 2021 WL 1405185, at *3 (S.D.N.Y. Apr. 14, 2021) ("A rebuttal expert report is not the proper 'place for presenting new arguments, unless presenting those arguments is substantially justified and causes no prejudice.'") (internal citations omitted); *see also Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*, 645 F. Supp. 3d 95, 106 (E.D.N.Y. 2022) ("Federal Rule of Civil Procedure 26(a)(2)(D)(ii) contemplates the submission of expert reports 'intended solely to contradict or rebut evidence on the same subject matter identified by [another expert witness] within 30 days after the other party's disclosure.'"). Plaintiff has expressly maintained that his experts "are rebuttal experts" whose opinions are "merely responsive." Pls.' Mem. Supp. Mot. Exclude Expert Test. (Dkt. 153) at 3, 5, 25. Therefore, consistent with the status of Plaintiff's experts as rebuttal witnesses and the governing authorities cited above, Defendants reserve the right to object to evidence or testimony from any of Plaintiff's experts that falls outside the scope of the opinions Defendants' experts intend to offer at trial.

## ARGUMENT

### A.   Plaintiff's Experts Should Be Precluded From Offering Testimony That Usurps The Role Of The Judge Or The Jury

It is bedrock law that expert testimony is inadmissible if it will usurp "the role of the jury in applying [the] law to the facts before it." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)); *see also* Fed. R. Evid. 704, Advisory Comm. Note (Rule 704 does not require "the admission of opinions which would merely tell the jury what result to reach."); *Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450, 529 (S.D.N.Y. 2001) (an expert cannot be permitted to "supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence"), *abrogated on other grounds by Casey v. Merck & Co.*, 653 F.3d 95 (2d Cir. 2011).  Indeed, it is axiomatic that while an expert's opinion may "embrace" an ultimate issue to be decided by the jury by providing underlying facts and context, experts may not substitute their own judgment for the jury's on an ultimate issue:

> When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determination.

*Duncan*, 42 F.3d at 101; *R.B. Ventures, Ltd. v. Shane*, 2000 WL 520615, at *4 (S.D.N.Y. May 1, 2000) ("The opinion of an expert witness is not otherwise admissible if the opinion . . . would merely tell the jury what result to reach, somewhat in the manner of oath-helpers of an earlier day.") (internal quotation marks omitted).

Likewise, the use of expert testimony "must be carefully circumscribed to [ensure] that the expert does not usurp the role of the trial judge in instructing the jury as to the applicable law." *Duncan*, 42 F.3d at 101.  In this vein, "[i]t is a well-established rule in the Second Circuit that

4

experts are not permitted to present testimony in the form of legal conclusions." *United States v. Articles of Banned. Hazardous Substances Consisting of an Undetermined No. of Cans of Rainbow Foam Paint*, 34 F.3d 91, 96 (2d Cir. 1994) (citing *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)); *see In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004); *Highland Capital Mgmt., L.P.*, 379 F. Supp. 2d at 468 (stating that while experts may opine on issues of fact, they may not give testimony stating ultimate legal conclusions based on those facts).  For this reason, experts may not testify on the legal implications of a party's conduct; instead, the court must be the jury's only source of law.  *Golden*, 2017 WL 11454726, at *2 (internal citation omitted) ("[A]n expert may not present opinions that invade the province of the court to determine the applicable law and to instruct the jury as to that law.").

Yet each of Plaintiff's experts tread far into this prohibited territory, freely offering legal opinions and conclusions concerning the ultimate issues of transformation, character and purpose, amount and substantiality, market usurpation, and what a "reasonable observer" "would conclude" in viewing the subject works.

For example, Harrison purports to "consider the purpose and character of the Prince Works" in offering his legal conclusion that "the Prince Works do not alter Plaintiffs' Works with new expression, meaning, or message."  Harrison Report (Ex. B) at 6.  He also opines on what a "reasonable observer" would conclude in viewing these works.  *Id.* ("Any reasonable observer can see that . . . [t]he Prince Works do not make any significant aesthetic change to Plaintiffs' Works").[4]  This is plainly the ultimate issue that the jury is tasked with deciding.  Harrison likewise

---

[4]  *See also* Harrison Report (Ex. B) at 8 ("In my opinion, a reasonable observer' would not derive some 'intellectual transformation.'"); *id.* at 9 ("McNatt's original artistic expression remain fundamentally intact to the reasonable observer because the physical alteration is so minimal and lacking in new meaning.").  Harrison's opinions should also be excluded in their entirety for the reasons set forth in Section D, *infra*.

5

should be precluded from opining on a visual comparison of the works and his view of "recent copyright jurisprudence," (Harrison Report (Ex. B) at 2), which again usurps the roles of both the Court and the jury.  Amy Whitaker similarly purports to offer opinions on the qualitative transformativeness, aesthetics, and meaning of Prince's works.[5]  *See, e.g.,* Whitaker Report (Ex. C) ¶¶ 30-31 (opining on the "transformative 'meaning' of the works"); ¶¶ 34-39.  Coleman, too, purports to "evaluat[e] whether a reasonable observer would view the Prince Works as having transformed Plaintiffs' Works" and the visual similarities or differences between the works.  Coleman Report (Ex. D) ¶¶ 34, 40-45.  And Bogre offers her opinion on what "a reasonable observer would conclude" when viewing the works.  Bogre Report (Ex. E) ¶ 47.

Beyond this, any expert opinion on the amount of McNatt's photograph that was used in Prince's *Portrait of Kim Gordon* or that visually compares the two works also impermissibly opines on the ultimate issues.  *See* Whitaker Report (Ex. C) ¶ 44; Harrison Report (Ex. B) at 6-9; Coleman Report (Ex. D) ¶¶ 40-45; Bogre Report (Ex. E) ¶¶ 47-53; *see also* 9/19/19 Hr'g. Tr. (Ex. A) at 8:6-9 (recognizing that "[t]he jury can compare the works; they don't need an expert to compare the works"); *Price v. Fox Ent. Grp., Inc.*, 499 F. Supp. 2d 382, 389 (S.D.N.Y. 2007) ("The jury is capable of recognizing and understanding the similarities between the works without the help of an expert."); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 644 (S.D.N.Y. 2007) (proffered expert testimony would not "assist the jury's determination of whether an ordinarily prudent purchaser would be confused as to the source of the [products at issue]").

All of these opinions do nothing more than tell the jury the ultimate answer that they should reach, and are improper subjects of expert testimony.  *See Nimely*, 414 F.3d at 397 ("We have

---

[5]    These opinions, as further explained below, are also independently excludable as without foundation or adequate methodology, and outside her qualifications.

consistently held . . . that expert testimony that 'usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it,' . . . by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's[.]'") (internal citations omitted).  At most, these experts may offer testimony, within their qualifications and with sound basis, concerning artistic critique, market landscape, or art historical context to help the jury evaluate and contextualize the parties' respective works, their meanings, or their markets.  But, consistent with the Daubert Ruling, any opinions on whether or not the works are creative, expressive, or transformative; on the works' character, meaning or purpose; on the amount or substantiality of aesthetic or conceptual similarity; of what a reasonable observer would conclude; or on the ultimate question of market usurpation should be excluded.  *See* 9/19/19 Hr'g. Tr. (Ex. A) at 8:6-9 (recognizing that "[t]he jury can compare the works; they don't need an expert to compare the works"); *id.* at 7:21-8:9 (stating that experts' opinions will be disregarded on summary judgment "to the extent they encroach on the jury's role").

For the same reasons, any legal opinions concerning legal precedent or prior legal decisions, either in this case or any other cases, including the meaning or significance of such decisions, should likewise be excluded.[6]  This, too, improperly invades the province of the Court to instruct the jury on the relevant law, and the Court has already recognized in the Daubert Ruling

---

[6]    To the extent that Plaintiff intends to introduce testimony from *any* witness, including fact witnesses, concerning the meaning or import of legal decisions, including this Court's summary judgment decision, or the decisions of other courts in other cases, it naturally follows that this too should not be permitted.  *See, e.g.*, *In re Navidea Biopharmaceuticals Litig.*, 2022 WL 16833587, at *8 (S.D.N.Y. Nov. 9, 2022) ("While an expert may opine on an issue of fact within the jury's province, an expert may not give testimony stating ultimate legal conclusions based on those facts.") (citation omitted); *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (recognizing this rule as "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle") (citation omitted).

that such legal conclusions or purported expert opinions on the law are improper and should not be admitted. *Id.* at 4:17-23 (stating that the Court was "not going to accept legal conclusions" and that it did not need expert testimony to determine what the law is); *see also Golden*, 2017 WL 11454726, at \*2; *Nimely*, 414 F.3d at 397.

### B.  Plaintiff Should Be Precluded From Presenting Cumulative Expert Testimony

Nor should Plaintiff be permitted to proffer more than one expert to opine on the same issues.  Federal Rule of Evidence 403 excludes relevant evidence where its probative value is "substantially outweighed" by considerations of, *inter alia*, "needless presentation of cumulative evidence." Fed. R. Evid. 403.  Both the United States Supreme Court and the Second Circuit have "noted the uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations." *Nimely*, 414 F.3d at 397 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993)); *United States v. Gentile*, 233 Fed. Appx. 86, 88 (2nd Cir. 2007) ("[E]ven relevant expert testimony, like all relevant evidence, may be excluded under [Federal Rule of Evidence] 403, if its probative value is outweighed by the danger that it would confuse the jury, be unfairly prejudicial, cause undue delay, waste judicial resources, or be cumulative.") (citation omitted).

As set forth in the parties' Joint Pretrial Order, witness list includes *four* experts: Stephen Holzen, Michelle Bogre, Nate Harrison, and Amy Whitaker, with Allan Coleman only recently being removed.  The opinions of four of those experts—Bogre, Coleman, Harrison, and Whitaker—all relate to the exact same issue: whether Prince's *Portrait of Kim Gordon* constitutes fair use.  *See* Bogre Report (Ex. E) at 14-24; Coleman Report (Ex. D) at 6-15; Harrison Report (Ex. B) at 2-10; Whitaker Report (Ex. C) at 5-23.  It is unhelpful, prejudicial, confusing, and above all, a waste of the jury's time to hear testimony about the same issue from two, three, or four of Plaintiff's experts—which is why courts routinely bar attempts to present such cumulative

8

testimony.  *See Highland Cap. Mgmt., L.P.*, 551 F. Supp. 2d at 184 (granting motion to exclude testimony of four expert witnesses where "[a]ny admissible opinion testimony that they would offer could be addressed by either [of the two remaining expert witnesses]"); *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258 (2d Cir. 1987) (affirming district court's exclusion of expert testimony as cumulative where at least four other witnesses opined on the same subject); *Member Servs., Inc. v. Sec. Mut. Life Ins. Co. of New York*, 2010 WL 3907489, at *27 (N.D.N.Y. Sept. 30, 2010) (granting motion to preclude expert witness where there was "substantial overlap between the expert reports on the issues reported on by [another expert], and there [was] no reasonable basis to allow a second expert to testify about the same things").  Plaintiff should be required to choose one expert to discuss any foundational or contextual facts that would assist the jury in evaluating the elements of fair use, rather than piling on multiple witnesses to testify on this same issue.

### C.    Plaintiff's Experts Should Be Precluded From Opining On Matters On Which They Are Unqualified To Offer An Opinion

The Court should also prohibit Plaintiff's experts from opining on matters on which they are unqualified to render an opinion.  *See LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 636 (S.D.N.Y. 2016), *aff'd*, 720 F. App'x 24 (2d Cir. 2017) (citations omitted) ("Whether a witness is qualified as an expert is a threshold question that precedes the court's relevance and reliability inquiries.").

This Court already recognized that Bogre is not an expert on the art market, and ruled that her conclusory opinions regarding the markets in which the parties' artworks were sold should be disregarded.  *See* 9/19/19 Hr'g. Tr. (Ex. A) at 10:8-15 ("Bogre is not an expert on art market valuations; and she, in fact, said that at her deposition. … Accordingly, I'll disregard that opinion of hers[.]").  Her unsupported and unqualified opinions about the art market should likewise be

9

excluded at trial, including but not limited to her opinions that: (1) the value of photographs can vary over time and Plaintiff's image of Kim Gordon "could skyrocket were she to be involved in a scandal or major life event" (Bogre Report (Ex. E) ¶ 57); (2) the value of Plaintiff's image has been "compromised by the notoriety of Prince's unauthorized derivative work" (*id.* at ¶¶ 60, 63); (3) if someone wishes to merchandize Plaintiff's photograph in the future, that Prince's *Portrait of Kim Gordon* would compete for those opportunities (*id.* at ¶ 64); and (4) Prince's *Portrait of Kim Gordon* has undermined the "potential market for new versions or new uses of" Plaintiff's photograph of Kim Gordon (*id.* at ¶ 59).  As Bogre does not have any relevant education, training, and/or experience to opine on the art market, her speculative opinions about the topic will only mislead and confuse the jury, and thus have no place at trial.  *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 459 (E.D.N.Y. 2007) (rejecting expert testimony where the expert's curriculum vitae and report did not indicate "any training and experience, let alone expertise" in the area on which the expert sought to opine, even where the expert may have had the requisite expertise in other related areas).

Likewise, this Court also previously recognized that, at most, Whitaker may be "qualified to testify on the art market based on her education, including an MBA and a degree in fine art, as well as her experience teaching business as it relates to the arts." *See* 9/19/19 Hr'g. Tr. (Ex. A) at 10:1-4.  But Whitaker's opinions stray far outside this expertise by purporting to opine on the appearance, meaning, and purpose of the works, and issues of fair use and transformativeness. Because these opinions exceed the bounds of her qualifications and expertise, she should be precluded from purporting to testify concerning the aesthetic or conceptual qualities of the works, or their meaning, purpose, appearance, or context in art history.  *See, e.g., 523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600, 647 (S.D.N.Y. 2014) (finding expert not qualified where "there

10

[was] no link between [the expert's] education/work experience and his qualification to render an [expert] opinion").

### D.    Plaintiff's Experts Should Be Precluded From Offering Opinions That Are Not Grounded In Sufficient Data Or Reliable Methodology

Regardless of an expert's qualifications, her opinions are not admissible unless they are reliable. *See Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 178 (S.D.N.Y. 2006) (precluding expert's opinion even though his "credentials qualify him to proffer an expert opinion" because "the report that he has submitted contains critical analytical gaps that render it unreliable and inadmissible"); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) ("[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.").

The improper legal opinions of Harrison in particular must be precluded under this standard.  When asked what he thinks would be "the right way to look at fair use," Harrison identified four criteria that he believes should be factored into any consideration of fair use and which formed the basis for his conclusions: (1) the artistic intention, (2) a formal analysis, (3) the reasonable observer test, and (4) expert opinions.  Harrison Dep. Tr. (Ex. F) at 26:4-41:4.  Harrison did not arrive at his conclusions by applying these criteria in any particular way; rather, he averred, "those [factors] are just maybe sort of organically in the back of my mind as I'm just thinking about ways of assessing this."  *Id.* at 36:7-11.  When asked whether others in his field would apply "a similar four prong test in looking at works such as the ones at issue in this case," the short answer was no.  *See id.* at 40:2-20 ("I don't know that I have had conversations explicitly laying out these sort of four prongs with people, but certainly they have come up in my discussions in one shape, way or form.").  Harrison is not aware of any peers in his field that apply a similar four-

prong analysis in assessing issues related to fair use. *Id.* at 40:24-41:4. And although Harrison testified that his four-prong analysis has "come up in various informal conversations just about how to kind of analyze artworks," it has never been subjected to peer review. *Id.* at 41:5-16; *see also id.* 41:17-19 (conceding that the criteria he used to compare Plaintiff's and Defendants' works were simply his "own original way of looking at this").

The four prongs of Harrison's test, which he argued "should be weighed sort of holistically" in a determination of fair use (*id.* at 26:19-21), are not a product or ingredient of any reliable methodology. Instead, they amount to his own legal opinion about the factors that he claims decisionmakers *should* consider when conducting a fair use assessment. These factors are therefore an entirely improper basis for Harrison's opinion, as they will only usurp the Court's role, conflict with the Court's instructions, and confuse the jury as to the proper standard that should be applied in a fair use case. *See Olin Corp. v. Lamorak Ins. Co.*, 2018 WL 1901634, at *21 (S.D.N.Y. Apr. 18, 2018); Fed. R. Evid. 403. Harrison should be precluded from offering any opinions that are grounded in his improper legal analysis. *See Celebrity Cruises Inc.*, 434 F. Supp. 2d at 182.

Furthermore, Harrison's opinions regarding Prince's *Portrait of Kim Gordon* should also be excluded because he has never seen the artwork in person, and his opinions about the "formal" qualities of the artwork are therefore completely speculative and without foundation. Harrison Dep. Tr. (Ex. F) at 30:7-31:23 (stating that his opinions about the artwork in question are based on what he "imagine[s]" the artwork in question has in common with other unidentified "paintings [he] did see in real life" from the same series). *See Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 381 (S.D.N.Y. 2014) (excluding opinion of expert who admitted "that he had failed to review all of the documents produced by [defendant] in the course of preparing his expert report");

12

*Celebrity Cruises Inc.*, 434 F. Supp. 2d at 182 (excluding expert's opinion because performance data existed and was available to the expert at the time she prepared her report); *Laumann v. NHL*, 117 F. Supp. 3d 299, 319 (S.D.N.Y. 2015) (excluding expert opinions "based on insufficient facts and data" where they were "not the product of any significant, independent research or study, but have instead been developed for the sole purpose of bolstering plaintiffs' position in this litigation") (emphasis omitted); *Capri Sun GmbH*, 595 F. Supp. 3d at 120 ("Even where the expert's method is reliable, her testimony may fail *Daubert*'s fit requirement where . . . her data is materially different from the data relevant to the facts of the case, [or] . . . the expert has failed to consider the necessary factors or based the analysis upon a faulty assumption") (internal quotation marks and citations omitted).

### E. Plaintiff's Experts Should Be Precluded From Offering Hyperbolic And Speculative Opinions At Trial

In the Daubert Ruling, the Court acknowledged that many of Plaintiff's expert reports, and Whitaker's in particular, "read like a protest article on art politics rather than proper rebuttal testimony," and that it would disregard such "hyperbolic" arguments in rendering its decision on summary judgment. *See* 9/19/19 Hr'g. Tr. (Ex. A) at 13:4-10. There is even greater reason to preclude these opinions from reaching the jury, as they are highly prejudicial and ultimately unhelpful and irrelevant.[7] Fed. R. Evid. 403; *Primavera*, 130 F. Supp. 2d at 529; *LinkCo, Inc. v.*

---

[7] Defendants anticipate that Plaintiff will seek to elicit from his experts the same kinds of highly prejudicial and unhelpful statements that appear throughout those experts' reports, examples of which include the following: (1) "Prince is a designer with a well-known label who has put his label on others' works without asking the underlying designers." (Whitaker Report (Ex. C) ¶ 23); (2) "If I said shoplifting were my art, I would still be stealing. If I said violence were a means of protest, I would still be liable for assault." (*id.* at ¶ 19); (3) "I do not see how taking images without contact, compensation, or exchange of the work itself is a gesture of opening portrait painting to those previously excluded by lack of wealth and status." (*id.* at ¶ 40); (4) "Prince has added value in so far as he is a rainmaker. He has power analogous to someone at the top of lobbying, law or finance firms . . . ." (*id.* at ¶ 53); (5) "Rather than instilling new expressions and new meanings, the Prince Works demonstrate Prince's cynical, self-absorbed use of other artists' works (*i.e.*,

*Fujitsu Ltd.*, 2002 WL 1585551, at \*2 (S.D.N.Y. Jul. 16, 2002) (rejecting expert report that "'does no more than counsel for [plaintiff] will do in argument, *i.e.*, propound a particular interpretation of [defendant]'s conduct'") (citation omitted).

Consistent with the Daubert Ruling, the Court should also prohibit Plaintiff's experts from offering speculative testimony that is untethered from the facts of the case or based on nothing more than the expert's personal, subjective view. *See* 9/19/19 Hr'g. Tr. (Ex. A) at 10:24-11:2 (stating that "[t]o the extent there are instances in which the experts proffer only *ipse dixit* opinions, I'm going to disregard [them]"). Plaintiff's experts' reports are rife with opinions that lack any factual basis or reasoned analysis, and are based solely on the expert's subjective, personal views, which will not assist the factfinder and only invite prejudice.[8] These types of personal, speculative,

---

Graham's and McNatt's) in the name of a vague 'commentary.'" (Harrison Report (Ex. B) at 8); and (6) "Prince and his defenders trot out all the predictable tropes of postmodern jargon, which add up to the assertion that because Richard Prince is an acclaimed artist who sells at very high prices and in whom many individuals and institutions are heavily invested both financially and reputationally, his assertion of entitlement to the output of others is not to be questioned, and he gets to do as he pleases." (Coleman Report (Ex. D) ¶ 19). Examples of similarly improper statements are set forth in Defendants' motions to exclude Plaintiff's experts (*see* Dkts. 132, 134-37, 160, 165-67) ("Defendants' *Daubert* Motions"), the arguments of which are fully incorporated herein.

[8]    For example, Whitaker states, "I could call myself a 'plagiarism writer' instead of an 'appropriation artist,' and I would still be accountable to people whose work I 'quoted' or the academic integrity policies of most universities." Whitaker Report (Ex. C) ¶ 19; *see id.* (suggesting that Prince has failed to adhere to "basic libertarian harm principles" and has "put[] others in harm's way"); *id.* at ¶ 21 (characterizing the opinions of defendants' experts as "at best accidentally undemocratic and at worst persistently and inexcusably colonialist and in need of updating"); *id.* at ¶ 23 ("Prince is a designer with a well-known label who has put his label on others' works without asking the underlying designers."); *id.* at ¶ 26 (describing Plaintiff as "a starving artist"); *id.* at ¶ 31 (arguing that art historians have assigned meaning to Prince's work only because they have "a vested interest in furthering [his] legacy"). The reports of Harrison, Coleman, and Bogre are equally peppered with political diatribe and personal attacks designed to prejudice Defendants. *See, e.g.*, Harrison Report (Ex. B) at 7 ("Such a narrative smacks of elitism, and a view of creative authorship as hierarchical."); Coleman Report (Ex. D) ¶ 15 (positing that post-modern art theory "would effectively preempt any claim to ownership . . . by any creator anywhere," causing "legal, ethical, and social construct [to] evaporate."); *id.* at ¶ 20 ("[A]ssorted artworld figures have argued on the record that the status of these individuals as acclaimed artists

unsupported viewpoints stray far outside the bounds of proper subjects of "expert" testimony, and are even more prejudicial when given the imprimatur of expertise by virtue of the fact that a designated "expert" is conveying them. *See, e.g.*, *Hiramoto v. Goddard Coll. Corp.*, 184 F. Supp. 3d 84, 98 (D. Vt. 2016), *aff'd*, 684 F. App'x 48 (2d Cir. 2017) (precluding expert opinion that "serves only to lend the imprimatur of an expert's qualifications to a matter within the jury's comprehension"); *Munn v. Hotchkiss Sch.*, 24 F. Supp. 3d 155, 199 (D. Conn. 2014), *aff'd*, 724 F. App'x 25 (2d Cir. 2018) ("Because expert testimony comes with a powerful imprimatur, district judges have a 'gatekeeping responsibility' to ensure that 'any and all scientific testimony or evidence admitted is not only relevant, but reliable.'") (quoting *Daubert*, 509 U.S. at 589)).  Such opinions should be excluded in their entirety.  *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 686 (S.D.N.Y. 2003), *aff'd,* 99 F. App'x 274 (2d Cir. 2004) (expert testimony that is "speculative or conjectural" or that is "connected to existing data only by the *ipse dixit* of the expert" is inadmissible); *In re Rezulin*, 309 F. Supp. 2d at 543-44 (excluding expert testimony based on the experts' "personal, subjective views"); *Snyder v. Wells Fargo Bank, N.A.*, 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (excluding expert report in full where it was "so ridden with improper statements and opinions" that the court "decline[d] to identify the limited portions that might qualify as expert testimony").

### F.    Plaintiff's Experts Should Be Precluded From Offering Testimony On Settlements Involving The Defendants

As an initial matter, Holzen should be excluded for the reasons stated in Defendants'

---

producing works with high market value overrides the intellectual property rights of the lower-profile intellectual property producers (by definition less moneyed, less able to afford high-powered legal representation and/or to attract art-world defenders) whose intellectual property they have taken for their own use without permission.").

*Daubert* motions, the arguments of which are fully incorporated herein. *See* Dkt. 127-1.[9]  But if Holzen is permitted to testify, then the Court should issue proper curative instructions to avoid unnecessary confusion, delay, and prejudice to Defendants. *See Dollman v. Mast* Indus., Inc., 2011 WL 3911035, at \*2 (S.D.N.Y. Sept. 6, 2011); *cf. Speedfit LLC v. Woodway USA, Inc.*, 2020 WL 130423, at \*5 (E.D.N.Y. Jan. 9, 2020) (precluding evidence under Rule 403 because "[u]nder these circumstances, the danger of unfair prejudice to defendant substantially outweighs whatever probative value evidence of Speedfit's sales and margins might have").

In any event, to the extent Holzen is permitted to testify, both he and the rest of Plaintiff's experts should be precluded from discussing the amount or existence of any settlement or settlement offers involving the Defendants, whether in this case or other cases.  Under Rule 408(a)(1), evidence offered "either to prove or disprove the validity or amount of a disputed claim," including "accepting . . . valuable consideration in compromising" is "not admissible."  Fed. R. Evid. 408(a)(1); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 287 (S.D.N.Y. 2015) (granting motion *in limine* to exclude evidence of prior settlements on Rule 408 and Rule 403 grounds); *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (5th Cir. 1986) ("Disclosing the amount of settlement had no proper purpose in the circumstances of this case and therefore it violated Rule 408.").  Accordingly, neither Holzen nor any of Plaintiff's other experts should be permitted to testify on the amount of any settlement in this or any other case in order to establish the validity of Plaintiff's claimed damages. *See Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 872 (2d Cir. 1994) ("Rule 408 of the Federal Rules of Evidence …

---

[9]  Notably, in the Daubert Ruling, the Court dismissed Holzen's report "without prejudice" and stated that Holzen's opinions would be dealt with "if need be."  9/19/19 Hr'g Tr. (Ex. A) at 13:25-14:2 ("I am going to dismiss without prejudice the report of plaintiffs' damages expert . . . and we'll deal with it if need be."); *id.* at 5:3-12 ("So if the result of the summary judgment motions is that we go on to damages, I'll then consider that. But I don't have to rule on the admissibility of the Holzen damage report at this point.").

bars the introduction of a settlement offer for the purpose of proving the amount of a liability.").

The only conceivable purpose of such evidence would be to influence the jury to use the settlement amount as a baseline for the value of Plaintiff's claim. Indeed, if Plaintiff is allowed to present this evidence, it creates an impermissible inference that Plaintiff's claim must be valid to at least that amount. *Crigger v. Fahnestock & Co.*, 2005 WL 857368, at *2 (S.D.N.Y. Apr. 14, 2005) ("Once the jury learns of the settlement, disclosure of its amount serves no purpose and could result in additional speculation."). However, the law requires *Plaintiff* to prove the nature and extent of his damages. And "since the offer [to settle] may be motivated by a desire for peace rather than from any concession of weakness of position," evidence of settlement is wholly irrelevant at trial. Fed. R. Evid. 408 Advisory Comm. Note (1972). Moreover, even if such evidence was relevant to any claim or defense in this action (which it is not), its probative value would be substantially outweighed by the prejudice to Defendants. *Highland Capital Mgmt., L.P.*, 551 F. Supp. 2d at 199 (excluding evidence of prior settlement because "the settlement agreement and any related evidence are not relevant to this case"); *Gaffney v. Dep't of Info. Tech. and Telecomms.*, 579 F. Supp. 2d 455, 459 (S.D.N.Y. 2008) (excluding settlement against defendant because it is "hearsay, for the most part irrelevant to this matter[,] and potentially confusing to the jury").

Accordingly, the Court should prohibit Plaintiff from presenting expert testimony on these issues.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order granting its motion in its entirety, together with such other relief as the Court deems just and proper.

Dated: December 29, 2023

Respectfully submitted,

*/s/ Alex Spiro*

Alex Spiro
Maaren A. Shah
QUINN EMANUEL URQUHART &
SULLIVAN LLP
51 Madison Avenue, 22nd Fl.
New York, NY 10010
(212) 849-7000
alexspiro@quinnemanuel.com
maarenshah@quinnemanuel.com

*Attorneys for Defendant Richard Prince*

Ian C. Ballon
Nina D. Boyajian
GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
(310) 586-7700
Ballon@gtlaw.com
BoyajianN@gtlaw.com

Dale R. Goldstein
GREENBERG TRAURIG, LLP
New York, NY 10017
(212) 801-9200
GoldsteinD@gtlaw.com

*Attorneys for Defendants Richard Prince, Blum
& Poe, LLC and Blum & Poe New York, LLC*

18